UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Julian Manuel Alejandro,<br><br>Petitioner,<br><br>v.<br><br>Warden Fikes,<br><br>Respondent. | Civ. No. 20–2230 (MJD/BRT)<br><br>**REPORT AND RECOMMENDATION** |

Julian Manuel Alejandro, *pro se* Petitioner.

Chad A. Blumenfield, Esq., United States Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Julian Manuel Alejandro's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. No. 1, Pet.) Alejandro alleges that he was denied due process when he was disciplined by prison authorities for possession of drugs, resulting in the loss of good conduct credit time. The parties have fully briefed the matter (Doc Nos. 7, 12) and it is ripe for decision. For the reasons that follow, this Court recommends the Petition be denied.

### I.   Background

Alejandro is presently serving a 46-month term of imprisonment followed by three years of supervised release for Unlawful Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1), and Distribution of a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Doc. No. 8, Decl. of Mark DeLoia ¶ 7, Ex. B.)

Alejandro is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"), and has a projected release date of August 22, 2021. (*Id.*)

The events underlying the Petition began on January 23, 2020 at approximately 9:10 a.m., when FCI-Sandstone staff searched cube K45-051. (*Id.* ¶ 9, Ex. D at 1.) Staff located scraps of paper saturated with an unknown substance underneath the plastic cap of a pill bottle inside of Alejandro's secured locker. (*Id.*) Staff secured the items and turned them over to the Bureau of Prisons' ("BOP") Special Investigative Service ("SIS"). (DeLoia Decl. ¶ 9, Ex. D at 3.) At 9:30 a.m., an SIS technician began NIK testing procedures on the saturated paper. (DeLoia Decl. ¶ 9, Ex. D at 5.) The technician applied "Test A" to a one-centimeter square sample of the paper, and the results showed "an immediate flash of orange color solution that turned to a brown color when the ampule was broken . . . . indicat[ing] a positive presence of Amphetamine-Type compounds." (DeLoia Decl. ¶ 9, Ex. D at 4–5.) The technician followed up with NIK Test U, during which the substance turned maroon in color, indicating a negative result for methamphetamines. (*Id.*) The technician concluded "the saturated paper contained a narcotic substance." (*Id.*, Ex. D at 5.)

That same day at 2:00 p.m., an incident report was delivered to Alejandro charging him with possession of drugs or alcohol in violation of Code 113 and he was advised of his disciplinary process rights. (DeLoia Decl. ¶ 9, Ex. D at 2.) Alejandro responded, "I have no idea about drugs. I did have a vitamin bottle in my locker that I bought at commissary." (*Id.*) The matter was referred to the Unit Discipline Committee ("UDC") for a hearing. (*Id.*)

On January 28, 2020, the UDC held an initial hearing on Alejandro's incident report. (DeLoia Decl. ¶ 9, Ex. D at 1.) There, Alejandro again stated that "[h]e didn't know about the drugs. He bought the pills in Commissary." (*Id.*) The UDC referred the incident report to the Discipline Hearing Officer ("DHO"), advised Alejandro of his rights during a DHO hearing, and provided Alejandro the opportunity to request witnesses and a staff representative. (DeLoia Decl. ¶ 9, Ex. D at 1; *see also* Exs. E, F.) Alejandro did not request any witnesses or a staff representative. (*See* DeLoia Decl., Ex. F.)

On January 30, 2020, Alejandro submitted an Inmate Request form to SIS Technician Dawson, the SIS technician responsible for the NIK testing of the pill bottle papers, requesting that "the narcotic substance be further test [sic] or sent out for testing." (Doc. No. 1-1 at 1.) Alejandro also requested that the "videos of contraband found in my locker be presented to me & DHO. My cell was positioned almost directly in front of the camera on K4 unit, so footage should be available." (*Id.*)

On February 12, 2020, DHO Mark DeLoia conducted a hearing on Alejandro's incident report. (*See* DeLoia Decl. ¶ 12, Ex. G.) At the DHO hearing, Alejandro stated, "This is completely out of character. During the time of my incarceration I have taken many programs. I am not understanding this. I just have to go with the flow I guess." (DeLoia Decl. ¶ 13, Ex. G at 1.) Alejandro did not call witnesses or request a staff representative, nor did he request DHO DeLoia review any additional evidence. (Deloia Decl. ¶¶ 13, 15, Ex. G at 1.)

3

On February 25, 2020, Alejandro presented a request for the January 23 incident footage to his counselor who purportedly "took the submitted [form and] tossed it across the desk and told [Alejandro] in no uncertain terms to 'go away.'" (Doc. No. 1-1 at 2.) Alejandro submitted the February 25, 2020 form that contains his notes regarding this meeting on it. (*Id.* at 4.) The request form shows Alejandro asked for footage to be "preserved for federal litigation related to my 1/23/20 I.R." (*Id.*)

Alejandro also sent a Freedom of Information Act request to the BOP, dated February 20 and received March 9, 2020. (*Id.* at 5.) The FOIA request asks for a copy of the NIK testing chart used, policies relating to administration of the test, staff roster for January 23, confirmation that video footage was preserved, administrative remedy records for a particular FCI-Sandstone officer, chain of custody information relating to the tested drugs, copies of the incident reports, and copies of the DHO repot. (*Id.*)

DHO DeLoia issued a written report on March 23, 2020. (*See* DeLoia Decl. ¶ 12, Ex. G.) Based on the incident report and supporting documentation, DHO DeLoia found Alejandro committed the prohibited act of Code 113, Possession of Drugs or Alcohol. (DeLoia Decl. ¶ 14, Ex. G at 2.) DHO DeLoia sanctioned Alejandro with (1) disallowance of 41 days good conduct time; (2) 30 days disciplinary segregation (suspended 180 days pending clear conduct); and (3) 90 days loss of commissary privileges. (*Id.*)

On March 27, 2020, Alejandro submitted a "renewed formal request for the preservation of certain video footage, in support of my disciplinary hearing appeals." (Doc. No. 1-1 at 2.) Alejandro detailed that he requested video footage from the K4 Unit

from the day of the search be preserved and provided for use in his disciplinary proceedings. (*Id.*) This appeal refers to the February 25, 2020 request that was purportedly tossed back at him. (Id).

## II.     Analysis

A 28 U.S.C. § 2241 habeas corpus petition is the appropriate vehicle for challenging a refusal to restore good-conduct time where restoration would shorten the prisoner's sentence. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002) ("[T]he Court held in *Preiser* that habeas corpus . . . is the exclusive federal remedy when a . . . prisoner seeks restoration of good time credits taken away by a prison disciplinary proceeding."). Thus, Alejandro's claim is appropriately before the Court.

Alejandro argues that he is entitled to habeas relief because he was denied due process. Specifically, Alejandro asserts that prison authorities (1) failed to present relevant video evidence at his DHO hearing; (2) did not conduct an outside drug test; (3) failed to respond to a Freedom of Information Act request concerning the reporting officer; and (4) the DHO did not consider the UDC officer's statement. (Pet. 2–3.) Respondent argues that Alejandro was afforded due process in his disciplinary hearing, and that sufficient evidence supports the DHO's decision that Alejandro committed the prohibited act as charged.

## A.     BOP's Disciplinary Program

The BOP has established guidelines for the imposition of discipline on inmates. 28 C.F.R. § 541.1 *et seq.* When BOP staff have reason to believe that an inmate committed a

prohibited act, a staff member prepares an incident report describing the alleged violation of the disciplinary code and refers it for investigation. 28 C.F.R. § 541.5; (DeLoia Decl. ¶ 3; Ex. A at 17–18.) The investigating officer provides the inmate with a copy of the incident report and investigates the matter. *Id.*

Upon completion of an investigation, a UDC holds an initial hearing, ordinarily within five work days after the incident report was issued. 28 C.F.R. § 541.7; (DeLoia Decl. ¶ 4, Ex. A at 23–24.) If the UDC finds the inmate committed the prohibited act, it can impose sanctions or refer the incident report to the DHO. (*Id.*) If an inmate is charged with a "Greatest" or "High" severity act, the UDC automatically refers the incident report to the DHO. (DeLoia Decl., Ex. A at 23.) If the UDC refers an incident report to the DHO, it provides the inmate with a copy of the UDC's decision and advises the inmates of his rights at a DHO hearing. 28 C.F.R. § 541.7; (DeLoia Decl. ¶ 4, Ex. A at 25.) The DHO serves as an impartial hearing officer responsible conducting institutional disciplinary hearings and imposing sanctions. 28 C.F.R. § 541.8; (DeLoia Decl., Ex A.at 27, 33, 44–55.) At a DHO hearing, an inmate is afforded the opportunity to have a staff representative, to make a statement, and to present witnesses and documentary evidence. 28 C.F.R. § 541.8; (DeLoia Decl. ¶ 5, Ex. A at 27–32.) An inmate is provided a written copy of the DHO's final decision. (DeLoia Decl. ¶ 5, Ex. A at 34.)

  **B. Due Process**

Depriving an inmate of good-time credit for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). Where a prison disciplinary hearing may result in the loss

of good-time credit, due process demands that the inmate receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence he relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)). The disciplinary findings must be "supported by some evidence in the record." *Id.* at 454.

Here, Alejandro received advanced written notice of the disciplinary charges. Alejandro was provided advance written notice of the charge against him prior to both the UDC and the DHO hearings. (DeLoia Decl. ¶ 9, Exs. D, F.) Specifically, Alejandro received the incident report on January 23, 2020 at 2:00 p.m. (DeLoia Decl. Ex. D at 1.) Then, on January 28, Alejandro was informed the incident was being referred to the DHO for the next available docket. (DeLoia Decl. Ex. F.)

When Alejandro was provided both the incident report and the DHO notice, he was notified of his ability to call witnesses and present evidence. The incident report includes a portion that details "Other facts about the incident, statements of those persons present at the scene, disposition of evidence, etc." (DeLoia Decl. Ex. D at 2.) Alejandro "requested no witnesses." (*Id.*) Then when Alejandro was notified the incident was being referred to a DHO, he was provided a more fulsome notice of his rights. (DeLoia Decl. Ex. E.) This included notification that Alejandro could have a representative, call witnesses, present evidence, present a statement or remain silent, be present at the hearing, and appeal a decision. (*Id.*) When notified, Alejandro indicated he did not wish

7

to have a staff representative or to have witnesses. (DeLoia Decl. Ex. F.) Then at the DHO hearing on February 12, 2020, Alejandro was again advised of his rights, acknowledged that he understood his rights, and did not call any witnesses or a staff representative, nor did he seek to introduce any evidence. (DeLoia Decl. ¶¶ 9, 15–16, Ex. G.)

Finally, DHO DeLoia met the third requirement of *Hill* when he subsequently issued a written statement of his findings, including the evidence he relied upon and the reasons for his decision. (DeLoia Decl. ¶ 14, Ex. G.)

Alejandro argues that his rights were violated because the DHO failed to consider video evidence at his hearing and because the DHO did not secure an outside drug test. In support, Alejandro attaches various exhibits showing that he was seeking to obtain an outside drug test plus the video evidence during the relevant time period. (Doc. No. 1-1) Critically, however, there is no indication in the record, nor any allegation by Alejandro, that he ever informed DHO DeLoia of his attempts to gather evidence outside the disciplinary proceedings. Alejandro cannot rely on these ancillary efforts to discredit the validity of the disciplinary process. Moreover, none of those requests were directed to the UDC or DHO. There is nothing in the record to explain why Alejandro did not raise his concerns at the DHO or inform DHO DeLoia in any way that he was seeking evidence for use in his disciplinary proceedings.

Accordingly, the DHO's alleged failure to consider such evidence does not amount to a due process violation in this case.

Alejandro also argues that the DHO should have had the opportunity to consider character evidence regarding the reporting officer in this matter. Alejandro alleges that he was unaware of the officer's identity, and thus could not raise this issue in a timely manner. (Doc. No. 12 at 1.) This is not supported by the record because the reporting officer's memorandum, identifying that officer by name, was attached to the incident report. (DeLoia Decl., Ex. D at 3.) Thus, Alejandro was informed of the officers involved in the investigation as of January 23, 2020, well ahead of the DHO hearing on February 12. Additionally, the records submitted by Alejandro show that he first requested this information on February 20, over one week *after* the DHO hearing on February 12. (Doc. No. 1-1 at 5.)

Alejandro asserts that DHO DeLoia failed to consider the UDC officer's statement. Alejandro does not elaborate on that claim and what statement Alejandro is referring to is unclear, but the record indicates that DHO DeLoia took into account the reporting officer's memorandum, the SIS technician's report, Alejandro's remarks at the UDC hearing, and Alejandro's statement at the DHO hearing. In other words, the record indicates that DHO DeLoia accounted for the evidence that was available to him and actually presented to him.

Finally, Alejandro's filing could be interpreted as asserting a due process claim on the grounds that the DHO's decision was not supported by the evidence. A federal inmate has received due process if at least "some evidence" supports a prison disciplinary authority's revocation of good time credits. *Hill*, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent

9

assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. The Supreme Court explicitly declined to adopt a more rigorous standard for reviewing prison disciplinary decisions, holding that due process "does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456. The judiciary's authority to review the decisions of prison disciplinary authorities is necessarily limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985) (citing *Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir. 1969)).

     Here, this Court finds there is at least "some evidence" in the record to support the DHO's decision in this matter. First, the substance in question was discovered inside a pill bottle in Alejandro's locker, indicating that it was within Alejandro's possession. Second, testing revealed that the substance was positive for amphetamine, though negative for methamphetamine. And while prisoners are permitted to challenge the results of drug testing during the disciplinary process, *see, e.g.*, *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986), Alejandro did not do so in a timely manner as discussed above. Third, DHO DeLoia acknowledged Alejandro's statements that he had "no idea" or "didn't know about the drugs," but found them unconvincing given the secure location the pill bottle was found in. Finally, this Court observes that the DHO explained that he afforded Alejandro's cursory defense no weight because Alejandro "provided no

evidence to support it." (*Id.*) In sum, the DHO decision is supported by some evidence in the record.

Based on the foregoing, the Court concludes Alejandro received due process during his prison disciplinary proceeding. While Alejandro may have been attempting to gather evidence to challenge the charge, he failed to inform the DHO of these attempts or raise his concerns in a timely manner within the disciplinary process. Accordingly, this Court recommends that the Petition be denied.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Alejandro's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

Date:  April 19, 2021

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).